Raymond **RIOS**, Plaintiff,

v.

**CONNECTICUT GENERAL LIFE INSURANCE COMPANY,** Defendant.

**No. 85 Civ. 7451 (RO).**

United States District Court, S.D. New York.

Aug. 1, 1996.

---

I. Peter Rayo, Rayo & Rayo, Brooklyn, NY, for Plaintiff.

Kevin J. Brennan, Dwyer & Brennan, New York City, for Defendant.

## MEMORANDUM AND ORDER

OWEN, District Judge.

Defendant Connecticut General Life Insurance Company ("CGLIC") moves to vacate a default judgment against it.

On May 4, 1983, plaintiff Raymond Rios applied for and obtained a long-term disability policy from CGLIC. The policy paid a monthly benefit in the event of disability caused by an accident or sickness in the amount of $950 per month for a maximum of five years. Three months later, Rios fell down a flight of stairs, and in September 1983 he filed a proof of claim with CGLIC. CGLIC paid the $950 per month for 18 months until February 4, 1985, when CGLIC wrote to Rios' attorney, Brian Sheridan, and informed him that it was rescinding Rios' policy, asserting that Rios had failed to disclose significant aspects of his prior medical and disability history (including that he had been in a traffic accident in 1981 and sustained serious injuries to his leg which rendered him unable to work until the end of 1982). CGLIC stated that, in fact, Rios owed the company for money wrongly received from CGLIC.

On September 20, 1985, Rios, represented by attorney Sheridan, filed a complaint against CGLIC in the Southern District of New York seeking the benefits under the policy and alleging RICO violations. Whether the complaint was properly served or not is an open question, see infra, but in the bigger picture, no matter. In any event, on November 4, 1985, Sheridan wrote to the judge to whom the case was assigned, stating that CGLIC had "intentionally defaulted," and requested the issuance of a default judgement. A default judgment was entered on December 20, 1985. Thereafter, more than two years later, by a letter dated January 27, 1988, Sheridan—on stationery reading "Brian Sheridan, Attorney at Law"—notified CGLIC about the default, and stated, "[t]he time to move to open this judgment has long expired." Sheridan did not notify his client of the default.

CGLIC claims that it never received notice of the summons and complaint. The process server's affidavit stated that he served a "Mrs. Sonia." CGLIC has stated that it did not employ anyone with the last name of Sonia, and a woman who might have been the one served, Mrs. Sonia Melendez, has stated by affidavit that she did not accept papers on the day the process server claims to have served them. Query, query.

The story becomes all the more bizarre when it is revealed that by January 1988, when Brian Sheridan got around to advising CGLIC of the default, he was no longer eligible to practice law, having been disbarred on February 17, 1987 for professional misconduct, including failure to deliver funds to clients, failure to notify clients of receipt of funds, and misrepresentation to clients of amounts received.

Now to the other side. CGLIC, notwithstanding it was notified of the default, did nothing. Six years passed after such notification before disbarred Sheridan wrote, from Pennsylvania, to the New York State Insurance Department—on stationery which had printed on the top: "Allied Window Decor, Inc., 'What You Put On The Window Makes A World Of Difference!'" Sheridan complained that the default judgment had not

been satisfied. In the letter, Sheridan stated that he still represented Rios "for purposes of collecting on the judgment." (I address Rios' side of this hereafter. Obviously, one can only treat these incredibilities one at a time.)

CGLIC, after notification from the Insurance Department, and unaware that Sheridan had been disbarred, decided not to move to vacate the default judgment, but instead chose to settle the matter and pay Rios $119,000. Accordingly, CGLIC sent Sheridan a check for $119,000, payable jointly to Rios and Sheridan as attorney. CGLIC also sent Rios a copy of the letter when it sent the check to Sheridan. Sheridan, in true form, failed to inform Rios of the settlement, forged Rios' signature, and deposited the money in his own bank account.

At this point, one might rightly ask "Where was the plaintiff Rios while all of this was transpiring?" According to Rios, Sheridan never told him that he had sought, much less received, a default judgment in 1985. *To the contrary,* he says that in 1986 Sheridan told him that nothing had happened in his case and that he intended to close the file. Rios claims that during the next eight years he tried but was unable to locate attorney Sheridan. Rios further states that in 1994, he and his family moved to Puerto Rico, and in November 1994, there arrived CGLIC's letter to him regarding the settlement and the $119,000 check. Rios, however, thinking CGLIC's letter was a "solicitation", did not open it until three months later, in February 1995. After finding out that $119,000 had been sent, he once again tried to contact Sheridan, but failed. He then contacted CGLIC. After a response by CGLIC that did not satisfy him, Rios retained his current counsel. CGLIC then hired an investigator who discovered that disbarred attorney Brian Sheridan had died in Philadelphia on March 9, 1995 of cirrhosis of the liver. The money was apparently gone.

In December 1995, Rios, through his new counsel, commenced a proceeding to enforce the 1985 default judgment against CGLIC. Plaintiff attempted to tie up CGLIC's funds by serving a "Judicial Subpoena Duces Tecum and Restraining Notice" on Fleet Bank in Brooklyn. CGLIC then moved this Court to vacate the underlying 1985 default judgment and stay any proceedings to enforce the judgment. On March 1, 1996, I granted the requested stay pending my decision on the motion to vacate.

■■■ I now dispose of CGLIC's motion to vacate as follows. I decline to vacate the 1985 default judgment. If one thing is certain in this incredibly sorry chain of events, it is that in 1994 CGLIC paid $119,000 to satisfy Rios' judgment, which involved events that had transpired ten years earlier. That payment, about which Rios was notified by mail, was made out jointly to the attorney of record that Rios had retained and had thereby proffered to CGLIC as such; there is nothing in the record to suggest that CGLIC had any awareness that Sheridan was not still Rios' lawyer, but instead had become a disbarred, alcoholic embezzler and forger. I thus conclude that the check, in standard form payable to the attorney *and* the client, in satisfaction of an outstanding valid judgment in this Court, constitutes termination of the claim in Rios' action filed in 1985. I also deem CGLIC is bound by its decisions over the last ten years, and specifically its ultimate one to settle the case for $119,000, rather than *promptly* to move to vacate the award. This Memorandum and Order, when filed with our clerk, will document *nunc pro tunc* the satisfaction of the judgment on the court's docket and effect closure of the case. Accordingly, plaintiff's restraining notice is declared void and of no effect, it being based upon a supposedly unpaid judgment which, in fact, has been satisfied.

I express no opinion as to the remedies available to Rios against the estate of Brian Sheridan, who shamelessly hoodwinked and swindled his client from the outset, or from the bank that paid Sheridan $119,000 on Rios' signature that Sheridan had forged. While, sadly, Rios was only one of a number of clients foully dealt with by Sheridan, Rios himself is not blameless. Not only does it appear that Rios failed to disclose significant, material prior medical information in his application for the CGLIC policy, which may have rendered the policy inapplicable, but also, when having received no information

from his lawyer on the progress of his case, he waited eight years, from 1986 until 1994, before taking any steps whatever. His three months' disregard of his mail, upon receipt of a letter from the very defendant he had sued and had not heard from for all these years, constitutes incredible neglect. These facts suggest that Rios had forgotten his claim against CGLIC ten years earlier, and only upon accidentally learning of the settlement by the belated opening of the CGLIC letter did he again become interested in the matter. If Rios really thought the CGLIC letter was "junk mail" as he suggests in his affidavit before me, one wonders why he kept it around for three months.

Accordingly, Rios' restraining notice is voided, and CGLIC's motion to vacate is denied.

So ordered.